**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| ) | |
| **GARY HALL,** ) | |
| ) | |
| **Petitioner,** ) | **07 Civ. 9264 (PAC)(LMS)** |
| ) | |
| *- against -* ) | |
| ) | **REPORT AND** |
| **R.K. WOODS, Superintendent,** ) | **RECOMMENDATION** |
| **Upstate Correctional Facility,** ) | |
| ) | |
| **Respondent**. ) | |
| _____ ) | |

**TO:   THE HONORABLE PAUL A. CROTTY,**
**        UNITED STATES DISTRICT JUDGE**

Petitioner, Gary Hall ("Petitioner"), *pro se*, files this petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging a judgment entered after a jury trial wherein Petitioner was found guilty under Westchester County Indictment Number #03-0459 of one count of Murder in the Second Degree (depraved indifference)(N.Y. Penal Law § 125.25(2)).  Docket #1 (Petition, herein "Pet.") at 1; Resp't Ex. A, Indictment; Trial Transcript (herein, "T") at 455-56.  On March 23, 2004, Petitioner was sentenced in the County Court of Westchester County to an indeterminate term of imprisonment of 25 years to life.  Sentencing Minutes (herein, "S") at 25.  Petitioner is currently incarcerated at the Attica Correctional Facility.  Notice of Change of Address.[1]

In his Petition, filed on September 27, 2007, Petitioner seeks habeas relief on four grounds: (1) that the evidence was legally insufficient to support a conviction of depraved

---

[1]This information is listed on the Docket sheet as a Pro Se Memorandum but was not given a Docket number. It appears between Docket numbers 9 and 10.

indifference murder; (2) that the verdict was against the weight of the evidence; (3) ineffective assistance of counsel; and (4) that the grand jury proceedings were defective.   Pet. at 7-8.[2]  I conclude, and I respectfully recommend that Your Honor should conclude, that the instant Petition should be dismissed.

## I.    BACKGROUND

### A.    The Crime

On September 7, 2002, Petitioner was an inmate at Sing Sing Correctional Facility in Ossining, New York.  T: 17.  On that date, Petitioner got into an altercation with another inmate, Robert Brown, in the recreational yard of the prison.  T: 76, 194, 299.  During this altercation, Petitioner took out a sharp object, often referred to as a "shank," and stabbed Brown in the neck. T: 301-303; 310.  Brown was unarmed during the altercation with Petitioner.  T: 75, 195, 301. Petitioner's friend took the bloody shank and hid it in a hole beneath a set of concrete steps.  T: 77.  Petitioner fled the scene, removing his bloody sweatshirt and depositing it in a garbage can. T: 192.  Correction Officer Gilman, who responded to the scene of the incident, noticed that Petitioner had a blood stain on his pants pocket and was sweating profusely.  T: 141.  At this point, Petitioner was cuffed and taken from the yard.  T: 145.  Other personnel from the Correctional Facility recovered both the shank from under the steps and Petitioner's sweatshirt from the garbage can.  T: 255-59; 271-78; 279-286.  An autopsy of Brown revealed that he died from a stab wound to his neck that penetrated his jugular vein and carotid artery.  T2: 92.[3]  The

---

[2]Petitioner does not specify in his Petition any grounds for relief but attaches the table of contents from his Appellate Brief.  This Court will assume, then, that the arguments articulated in his Appellate Brief are those for which Petitioner seeks habeas review.

[3]The final day of trial, January 27, 2004, is a separately numbered transcript that will be referred to as T2.

blood found on Petitioner's sweatshirt, boots, pants, gloves and tee-shirt matched that of the victim.  T2: 28-47.  The victim's blood was also found on the shank recovered from under the concrete steps.  T2: 51.

Petitioner testified in his own behalf at trial that it was Brown who attacked him and that Petitioner acted in self-defense.  T2: 125, 127, 132, 156.  However, on cross examination, Petitioner asserted that he stabbed Brown by accident as he tried to disarm him.  T2: 139-140.  Petitioner also admitted during his testimony that he went to the shower area and washed the victim's blood off his hands.  T2: 130-31.

**B.** **Procedural History**

Petitioner was indicted on April 8, 2003, by Westchester County Indictment Number #03-0459, for one count of Murder in the Second Degree (intentional) (N.Y. Penal Law § 125.25(1)); one count of Murder in the Second Degree (depraved indifference) (N.Y. Penal Law § 125.25(2)); and one count of Manslaughter in the First Degree (N.Y. Penal Law § 125.20(1)). Resp't  Ex. A (Indictment).  Petitioner's appointed counsel, Darien Zoppo, filed several pre-trial motions including a request to dismiss the indictment on the basis that it was not supported by legally sufficient evidence and a request to inspect the grand jury minutes and, if they were found to be defective, to dismiss the indictment on that basis.  The Court denied these motions, stating that the indictment was "sufficient on its face," and that "[t]he Grand Jury was properly instructed and the evidence presented, if accepted as true, would be legally sufficient to establish every element of the offenses charge."  Resp't Ex. B, Decision and Order, at 1-2.

A jury trial commenced on January 22, 2004.  See generally Trial Transcripts.  At the close of the People's case, Petitioner's counsel made a motion for a trial order of dismissal.

At this time I'm asking the Court to consider a trial order of

3

> dismissal as to counts one, two and three of the indictment, all the
> counts in the indictment, as the People have failed to set forth a
> *prima facie* case sufficient to allow this to go to the jury based on
> the evidence that's been elicited at this trial.  I would submit, with
> respect to this case, there's no clear evidence of an intentional act
> regarding the murder.  There's no clear evidence of depraved
> indifference to human life conduct with respect to the murder, and
> there's no clear evidence of an intent to cause serious physical
> injury thereby causing death on the manslaughter count.

T: 103; Resp't Ex. C.  The application was denied by the trial court in its entirety.  Id.  At the

close of the four day trial, Petitioner requested, and was granted, a justification charge.  T2: 191.

Petitioner also made a general motion after summations for an order of dismissal:

> Judge, I would make a motion at this time.  I submit to dismiss this
> case.  All three of the charges because the People have failed to
> establish a *prima facie* case.  I would move for a trial order of
> dismissal.

T: 360; Resp't Ex. D.  Petitioner's request was denied by the trial court.  Id.  Petitioner was

convicted of one count of Murder in the Second Degree (depraved indifference) (N.Y. Penal

Law § 125.25(2)) and was sentenced to an indeterminate sentence of 25 years to life in prison.

T: 455-56; S: 25.

Petitioner directly appealed his conviction to the Appellate Division, Second Department,

raising the same claims that he raises in this Petition.  Resp't Ex. F, Appellate Brief.  By

Decision and Order, the Appellate Division affirmed Petitioner's conviction stating:

> The defendant's claims that the evidence was insufficient to
> establish his guilt of depraved indifference murder (*see* Penal Law
> § 125.25[2]) was not preserved for appellate review as the
> defendant's motion to dismiss was not "specifically directed" to
> the depraved indifference charge.  To the extent the motion
> referred to the defendant's earlier dismissal motion made at the
> close of the People's evidence, that too did not include the
> argument that the evidence was consistent with the intentional
> murder, as now argued on appeal.

4

People v. Hall, 32 A.D.3d 864 (2d Dept. 2006); Resp't Ex. J, Decision and Order, at 1.  The

Appellate Division also determined that Petitioner's guilt at trial rendered moot any argument

regarding the grand jury and that Petitioner's remaining claims were without merit.  Id. at 1-2.

Petitioner sought leave to appeal to the New York State Court of Appeals on October 5,

2006.  Resp't Ex. K, Application for Leave to Appeal.  In his application, Petitioner raised only

two issues: whether the issue of the legal sufficiency of the evidence was preserved at trial; and

(2) whether the evidence at trial was legally insufficient to establish guilt of depraved

indifference murder.  Id.  On November 16, 2006, the Court of Appeals denied Petitioner's leave

to appeal.  People v. Hall, 7 N.Y.3d 902 (2006); Resp't Ex. M, Certificate Denying Leave.  On

September 27, 2007, Petitioner timely filed the instant Petition for a writ of habeas corpus and

has no other appeals or petitions pending.  Pet. at 5.

## II.     DISCUSSION

### A.     Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may

consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

federal review, "[s]tates should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731

(1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d

Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28

U.S.C. § 2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion

doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner

must have "fairly presented" his or her federal constitutional claim to the appropriate state

courts.  Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state

courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts

in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at

191).  In other words, the claim must have been presented in a way that is "likely to alert the

court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is

satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or

"under the Constitution," that point to the petitioner's reliance on the United States Constitution

as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).  A claim

may be considered "presented" even if the federal grounds were not explicitly asserted before

the state courts if the petitioner, in asserting his or her claim before the state court, did one of the

following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on

pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or

her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation.  See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court.  Klein, 667 F.2d at 282.  Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted.  Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)).  There is, however, another avenue available for exhaustion purposes.  A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction.  See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial.  Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court.  28 U.S.C. § 2244(d)(1).  This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  The limitations period may also be equitably tolled if a petitioner can show

that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**B.   Petitioner's Claims**

1.   *Petitioner's claims regarding the legal sufficiency of the evidence and weight of the evidence are procedurally barred.*

Petitioner claims that the evidence at trial was legally insufficient to support a conviction for depraved indifference murder and that such a conviction was against the weight of the evidence. Pet. at 7; Resp't Ex. F, Appellate Brief (herein, "App. Brief"). Respondent contends that Petitioner does not raise a federal constitutional claim such that his habeas petition should be considered by this Court. Resp't Mem. at 2-3. Additionally, Respondent argues that Petitioner's claim of sufficiency of the evidence and weight of the evidence are procedurally barred.

Respondent's initial argument contends that because Petitioner relies solely on his state court Appellate Brief, he does not raise a federal constitutional claim. It is well settled that a petitioner must have "fairly presented" his or her constitutional claim in the state court. Picard, 404 U.S. at 275. The claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. A petitioner can accomplish this by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so

8

particular as to call to mind a specific right protected by the
Constitution, [or] (d) allegation of a pattern of facts that is well
within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194.  In this case, Respondent is correct in pointing out that Petitioner has not

cited to any federal law, federal case, or Constitutional provision in his Appellate Brief that

would "alert a court to the federal nature" of his claim.  Id. at 192.  However, one of the methods

mentioned above by which a petitioner can "fairly present" his or her constitutional claim in the

state court is to rely on state court cases that employ federal law or federal Constitutional

analysis.  A review of the state court cases that Petitioner relies on in his Appellate Brief reveals

that two of them, People v. Contes, 60 N.Y.2d 620, 621 (1983) and People v. Hines, 97 N.Y.2d

56, 62 (2001), employ the standard Supreme Court analysis of insufficiency of the evidence

found in Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The factual situations found in each of

these two cases is not analogous to the instant case.  However, even if the Jackson references in

these two cases were found to be sufficient to satisfy Petitioner's burden to "fairly present" his

federal claim to the state court, Petitioner's application for habeas relief would still be barred on

procedural grounds.

The Supreme Court has held that a federal court may not review a claim in a habeas

petition "when a state court declined to address a prisoner's federal claim because the prisoner

had failed to meet a state procedural requirement."  Coleman v. Thompson, 501 U.S. 722, 730

(1991).  This decision is grounded in the idea that the state has "independent and adequate state

grounds" for such a dismissal and federal courts are ever mindful of notions of "comity and

federalism."  Harris v. Reed, 489 U.S. 255, 260 (1989); Coleman, 501 U.S. at 730.  In other

words, "an adequate and independent finding [by a state court] of a procedural default will bar

federal review of the federal claim."  Harris, 489 U.S. at 262.  Petitioner can overcome such a

procedural default if he or she can show "cause for the procedural default and prejudice attributable thereto" (Harris, 489 U.S. at 262) or "actual innocence" (Schlup v. Delo, 513 U.S. 298 (1995)).

Here, the Appellate Division determined that Petitioner's "claim that the evidence was insufficient to establish his guilt of depraved indifference murder was not preserved for appellate review as the [Petitioner's] motion to dismiss was not 'specifically directed' to the depraved indifference charge.  To the extent the motion referred to the [Petitioner's] earlier dismissal motion made at the close of the People's evidence, that too did not include the argument that the evidence was consistent only with intentional murder, as now argued on appeal." People v. Hall, 32 A.D.3d 864 (2d Dept. 2006); Resp't Ex. J, Decision and Order, at 1.  Such a procedural default is an independent and adequate state ground for denial of a claim and, therefore, precludes a federal court from considering the matter on habeas review.  See also Hughes v. Phillips, 457 F. Supp. 2d 343, 369 (S.D.N.Y. 2006)("[T]he Appellate Division's invocation of the procedural bar was an independent and adequate State ground for denial of relief that prevents habeas relief . . .").  Federal courts have specifically applied this type of procedural bar to the specific question at issue in Petitioner's case: the failure to set forth the specific grounds for a motion to dismiss made at trial based on insufficiency of the evidence as to depraved indifference murder.  In Brito v. Phillips, 485 F.Supp.2d 357, 363 (S.D.N.Y. 2007), the Court held that "a general motion to dismiss does not preserve a challenge to the legal sufficiency of the evidence of depraved indifference." Thus, Plaintiff's boilerplate motion to dismiss made at trial did not preserve the issue for appeal and the Appellate Division refused to consider it.  As such, this Court cannot consider it as the claim is procedurally barred.

Furthermore, Petitioner has provided neither proof of the cause for the procedural default

10

nor any prejudice attributable thereto.  He has also not asserted that he is actually innocent, in fact his claim asserts that he is, in fact, guilty of intentional murder rather than depraved indifference murder.  Furthermore, courts have refused to exercise jurisdiction over cases where petitioners seek review of a depraved indifference murder conviction based on the assertion that the killing was intentional "in the interests of justice."  See People v. Danielson, 40 A.D.3d 174, 175 (1st Dept. 2007)("Moreover, in a criminal case such as this, where a defendant's argument for appellate reversal rests on the unseemly assertion that he is entitled to relief because he intentionally murdered the victim, rather than having recklessly caused his death, no plausible argument can be made that review of the defendant's claim is in the interests of justice").  Therefore, Petitioner's first claim must be dismissed.

### 2. *Petitioner's claim of ineffective assistance of counsel is both procedurally barred and is without merit.*

Petitioner argues that, in the event that the Court rules that his claims regarding insufficiency of the evidence and weight of the evidence were not properly preserved at trial,  his trial counsel was ineffective because counsel did not make a proper motion to preserve such a claim.  App. Brief at 32-34.  Respondent argues that although Petitioner raised the claim of ineffective assistance of counsel in the Appellate Court, he failed to present this claim for review in his leave to appeal to the New York State Court of Appeals.  This, Respondent alleges, renders his claim procedurally barred.  Resp't Mem. at 11-21.  Respondent further contends that Petitioner's claim of ineffective assistance of counsel is meritless.  Id.

A Petitioner seeking habeas review must first present his or her federal constitutional claims to the appropriate state court.  Picard v. Connor, 404 U.S. at 275-76.  Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having

11

been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282.  Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted.  Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)).  However, New York State allows only one request for review by the Court of Appeals per conviction.  See N.Y. Ct. Rules, Court of Appeals, § 500.10(a).

Petitioner included a claim of ineffective assistance of counsel in his Appellate Brief but only submitted one claim to the New York State Court of Appeals – that of insufficiency of the evidence.  See App. Brief; Resp't Ex. K, Application for Leave to Appeal.  Since Petitioner failed to raise the claim of ineffective assistance of counsel to the highest court of the state, and because the New York State Court of Appeals does not allow more than one request for review, Petitioner has procedurally defaulted his claim of ineffective assistance of counsel and this Court cannot consider it.

Moreover, Petitioner's claim of ineffective assistance of counsel is without merit.  The Sixth Amendment right to counsel is the right to effective assistance of counsel. McMann v. Richardson, 379 U.S. 759, 711 (1970).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial can no longer be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1994).  Where a petitioner claims ineffective assistance of counsel, the court's ultimate focus must be on "the fundamental fairness of the proceeding whose results are being challenged."  Id. at 696.  In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland, a habeas petitioner must satisfy a two part test.  Id.  First, he or she must show that counsel's

performance "fell below an objective standard of reasonableness." <u>Id.</u> at 688.  Second, the

petitioner must show that the deficient performance prejudiced the defense.  <u>Id.</u> at 692.  This

requires showing that there is a "reasonable probability" that but for counsel's error, the outcome

would have been different.  <u>Id.</u> at 686.

In order to satisfy the first prong of the <u>Strickland</u> test, a petitioner must show that

counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." <u>Id.</u> at 687.  The inquiry must be whether counsel's

assistance "was reasonable considering all the circumstances," however "no particular set of

detailed rules for counsel's conduct can satisfactorily take account of the variety of

circumstances faced by defense counsel or the range of legitimate decisions regarding how best

to represent a criminal defendant." <u>Id.</u> at 688-689.  In assessing the deficiency of counsel, there

exists a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." <u>Id.</u> at 689.  In addition, a fair assessment requires that "every effort

must be made to eliminate the distorting effects of hindsight," as there are "countless ways to

provide effective assistance in any given case." <u>Id.</u> at 689.  Strategic choices made after a

thorough investigation of the law and facts are "virtually unchallengeable." <u>Id.</u> at 690.

 Even if a petitioner shows that counsel made unreasonable errors, the petitioner "must

show that [such errors] actually had an adverse effect on the defense." <u>Id.</u> at 693.  It is not

enough for a petitioner to show that an error had "some conceivable effect on the outcome of the

proceeding." <u>Id.</u>  Rather, the reviewing court must assess "whether, absent counsel's deficient

performance, there is a reasonable probability that the outcome of the proceeding would have

been different." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 2004)(internal quotes and

citation omitted).  A reasonable probability is "a probability sufficient to undermine the

confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffective claim." Strickland, 466 U.S. at 700.

Petitioner's only complaint regarding trial counsel's performance is that counsel did not make his motion for dismissal specific enough to address the insufficiency of the evidence with regard to the depraved indifference murder charge.  App. Brief at 32-33.  This allegation is based mainly on the fact that New York law regarding depraved indifference murder shifted *after* Petitioner's trial and conviction.  In People v. Payne, 3 N.Y.3d 266, (2004), decided nine months after Petitioner's conviction, the New York Court of Appeals questioned whether circumstances such as those presented in Petitioner's trial could support a conviction of depraved indifference murder.  The Court of Appeals held that a defendant cannot be convicted of depraved indifference murder if the situation presented at trial was one of an intentional, one-on-one killing.  Payne, 3 N.Y.3d at 271.  However, under the law at the time of Petitioner's trial, the fact that "a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference." Policano v. Herbert, 7 N.Y.3d 588, 600-01 (2006).  Such was the law at the time of Petitioner's trial and, therefore, his trial counsel's strategy and Petitioner's conviction for depraved indifference murder were consistent with this holding.  Petitioner wishes this Court to believe that trial counsel was ineffective because he did not know that, subsequent to Petitioner's trial, the Court of Appeals would change the standard for depraved indifference murder and, therefore, trial counsel should have argued this new standard.  Petitioner's claim is convenient hindsight.  Trial counsel's arguments at the time of trial were effective based on the law as it stood at that time and counsel's actions in this regard did not render his representation ineffective.

Additionally, Petitioner's testimony at trial was inconsistent.  During his direct examination, Petitioner testified that he did kill the victim but it was in self-defense.  T2: 125, 127, 132, 156.  During cross-examination, however, Petitioner testified that the killing was accidental.  T2: 139-140.  Faced with his own client's inconsistent testimony, trial counsel did a more than adequate job in making the standard motions for dismissal.  Furthermore, trial counsel effectively cross-examined the People's witnesses, requested and received a justification charge from the Court, properly represented Petitioner's interests at various pre-trial hearings, and presented Petitioner's case to the jury in a clear and concise manner.  See generally Trial Transcripts.  Because Petitioner has failed to show that trial counsel's performance fell below an objective standard of reasonableness and that Petitioner was prejudiced by counsel's actions, Petitioner's claim of ineffective assistance of counsel should be dismissed.

### 2. *Petitioner's claim regarding issues before the Grand Jury is both procedurally barred and not cognizable on habeas review.*

Petitioner's final claim is that the evidence presented to the Grand Jury with regard to depraved indifference murder was insufficient and that such Grand Jury proceedings were defective.  App. Brief at 35-37.  Respondent contends that this issue is procedurally barred and that, in the alternative, the claim is not cognizable on habeas review.  Resp't Mem. at 20-21.

Similar to Petitioner's ineffective assistance of counsel claim, Petitioner failed to raise his claims regarding the Grand Jury proceedings with the New York State Court of Appeals. Resp't Ex. K, Leave to Appeal.  Since Petitioner failed to raise this claim with the highest court of the state, and because the New York State Court of Appeals does not allow more than one request for review, Petitioner has procedurally defaulted his claims regarding the Grand Jury proceedings and this Court cannot consider it.

Additionally, "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." Davis v. Mantello, 42 Fed. Appx. 488, 2002 WL 1032687 at *490 (2d Cir. May 22, 2002).[4]  This is based on the theory that any defect in the grand jury proceeding is cured by the consideration of all the evidence and the subsequent conviction by the petit jury at trial.  See generally Lopez v. Riley, 865 F.2d 30 (2d Cir. 1989). "Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." Id. at 32.  Because Petitioner was convicted by a petit jury at his trial, his claims regarding the Grand Jury proceedings are not cognizable on habeas review and should be dismissed.

## III.   CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed.  As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

## IV.   NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

---

[4]In the spirit of Local Civil Rule 7.1(c), copies of the opinions with only WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file

written objections to this Report and Recommendation. Such objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Paul

A. Crotty, at the United States District Court, Southern District of New York, United States

Courthouse, 500 Pearl Street, New York, New York 10007, and to the chambers of the

undersigned at the United States District Court, Southern District of New York, United States

Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Crotty.


Dated: April 29, 2011
       White Plains, NY


                                        Respectfully submitted,


                                        LISA MARGARET SMITH
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Paul A. Crotty, USDJ
United States Courthouse
500 Pearl Street
New York, New York 10007

Gary Hall, #98-A-0654
Attica Correctional Facility
P.O. Box 149
Attica, New York 14011-0149

John Sergi, ADA
Westchester County District Attorney's Office
111 Dr. Martin Luther King Jr. Blvd
White Plains, New York 10601